UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KRISTEN ALLEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No: 05 C 2130 |
| | ) | Judge John W. Darrah |
| FIRST AMERICAN CREDCO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kristen Alley ("Alley"), brought the underlying action against Defendant, First American CREDCO, Inc. ("CREDCO"), a reseller of consumer credit information, alleging that CREDCO failed to follow reasonable procedures to ensure that it accurately reported her credit information, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Currently before the Court is CREDCO's Motion for Summary Judgment.

## FACTS

Kristen Alley had a credit account with Shell Management Hawaii, which she shared with another person who is not a party to this suit. (Def's 56.1 Statement at ¶ 22; Pl.'s 56.1(b)(3)(C) Statement at ¶ 1). Alley's Shell Management account went unpaid from November 2002 until May 2003; and when it was paid in May 2003, Alley's Shell Management account was more than 120 days delinquent. (Def's 56.1 Statement at ¶ 22; Pl.'s 56.1(b)(3)(C) Statement at ¶¶ 1-2).

In February 2004, Alley obtained a copy of her credit report from Equifax, Inc., a consumer credit reporting bureau. (Def's 56.1 Statement at ¶ 23). Alley's Equifax credit report

1

indicated that Alley had an outstanding balance on her Shell Management account of $683. (Def's 56.1 Statement at ¶ 23). In March 2004, Alley initiated a dispute with Equifax. (Def's 56.1 Statement at ¶ 24). Thereafter, Equifax informed Alley that the balance on her Shell Management account would be changed to zero. (Def's 56.1 Statement at ¶ 24).

In March 2005, Alley began the process of refinancing her mortgage with Lending Tree Loans by filling out an application on Lending Tree's website, Lendingtree.com. (Def's 56.1 Statement at ¶ 25). Alley paid a $600.00 deposit to Lending Tree to lock in the best available rate. (Pl.'s 56.1(b)(3)(C) Statement at ¶ 24). In March 2005, Lending Tree requested credit information regarding Alley from the Defendant, CREDCO, which is a reseller of consumer credit information. (Def's 56.1 Statement at ¶ 26). CREDCO provided Lending Tree with two credit reports dated March 21 and March 24, 2005. (Pl.'s 56.1(b)(3)(C) Statement at ¶ 3). CREDCO provided this credit information in a format referred to as a CREDCO "Instant Merge Report." (Def's 56.1 Statement at ¶¶ 5, 26). The Instant Merge Reports contain data culled from appropriate repositories, primarily the three major credit bureaus–Equifax, Experian, and Trans Union. (Def's 56.1 Statement at ¶ 6).[1]

---

[1] To request a CREDCO Instant Merge Report about a consumer, CREDCO's customers submit information, which includes the consumer's name, address, and social security number, to CREDCO electronically. (Def's 56.1 Statement at ¶ 7). Once CREDCO receives this information, it validates the request by verifying that the required information has been provided and that the customer is a valid customer who is entitled to do business and entitled to receive the requested report. (Def's 56.1 Statement at ¶ 7). If the request is properly validated, CREDCO identifies the repositories from which it needs to obtain data, based upon the customer's request. (Def's 56.1 Statement at ¶ 8). CREDCO then contacts the repositories electronically to request the needed data. (Def's 56.1 Statement at ¶ 8). Once CREDCO requests data from the repositories, they transmit that data to CREDCO almost immediately. (Def's 56.1 Statement at ¶ 9). When it receives the data from repositories like Equifax, CREDCO's computer system automatically formats that data into a CREDCO Instant Merge Report according to the specifications of the customer with no human involvement or verification by any employee of CREDCO. (Def's 56.1 Statement at ¶¶ 9, 17-18). On average, CREDCO

Both of the CREDCO credit reports provided to Lending Tree stated that Plaintiff had one delinquency, a Shell Management account that had a "Last Delinquency" and a "Last Maximum Delinquency" occurring in December 2004. (Pl.'s 56.1(b)(3)(C) Statement at ¶ 3).[2] The data that Equifax provided to CREDCO indicated the status of Alley's Shell Management account as of December 2004 but did not indicate when Alley's account with Shell Management first became delinquent or when the account balance was paid. (Def's 56.1 Statement at ¶¶ 34, 35). "Last delinquency" is a label used by CREDCO. (Pl.'s 56.1(b)(3)(C) Statement at ¶ 9). Equifax did not provide CREDCO with the date of "maximum delinquency" that appeared on Plaintiff's Instant Merge Report as Equifax does not report data in a field labeled "maximum delinquency"; rather, CREDCO derived the date of maximum delinquency on Plaintiff's CREDCO Instant Merge Report by analyzing the 24-month payment history, the Rate/Status code and all of the "previous rates" to determine the worst recent outstanding delinquency,

---

prepares approximately sixty thousand reports per day. (Def's 56.1 Statement at ¶ 17).

[2] The data that Equifax provided in the March 21, 2005 credit report noted that Alley's account with Shell Management had a balance of $0, a "rate/status code" of 5, a "date reported" of 12/2004, and "narrative" codes of FA and EF. (Def's 56.1 Statement at ¶¶ 27, 33, 34). A "rate/status code" of 5 indicates that the account was reported as being over 120 days delinquent; "Narrative" code of "FA" means that an account has been paid and is closed; and a "Narrative" code of "EF" means that an account is a real estate loan account. (Def's 56.1 Statement at ¶¶ 28-30). The merged credit report that CREDCO provided to Lending Tree on March 24, 2005 also includes a "Tradeline Information" entry regarding Alley's account with Shell Management, which shows that Alley's account with Shell Management was closed, that it had a status of "DEL-120," a "Rptd" date of "12-04," a "1" under the "Past due" column heading "90+," and a "LastDlq" date of 12-04. (Def's 56.1 Statement at ¶ 36). On the line labeled "Hist:", the report indicates "12 04 5." (Def's 56.1 Statement at ¶ 36). On the line labeled "Lates:", the report states "1x90+:12-04." (Def's 56.1 Statement at ¶ 36). The tradeline also includes the notation "PAID – CREDIT LINE CLOSED." (Def's 56.1 Statement at ¶ 36). The "Last Dlq" date reported in the Shell Management tradeline on CREDCO's report regarding Alley is derived from the "Date Reported" data provided by Equifax, which indicated that the current rate/status in December 2004 was "5." (Def's 56.1 Statement at ¶ 37).

3

which CREDCO refers to as the "Date of Maximum Delinquency." (Pl.'s 56.1(b)(3)(C) Statement at ¶¶ 4, 9). CREDCO employee, Mohammad Bazlul Hadi, testified that the "Last Delinquency" means the last delinquency that occurred on the account. (Pl.'s 56.1(b)(3)(C) Statement at ¶ 11). At the time that Alley was applying for the mortgage loan, she had credit scores ranging from 765 to 803, which are considered to be very good credit scores. (Pl.'s 56.1(b)(3)(C) Statement at ¶ 23). The Shell Management Account was the only delinquent account on Alley's credit report. (Pl.'s 56.1(b)(3)(C) Statement at ¶ 22). The Shell Management account complained of by Alley was paid off completely nearly two years before her application with Lending Tree. Lending Tree specifically considered 24-month histories. (Pl.'s 56.1(b)(3)(C) Statement at ¶ 25).

On March 22, 2005, Anousith Kounlavong, a Lending Tree mortgage broker, advised Alley that her application was denied by Lending Tree's "CERT" program (the computer program Lending Tree uses to determining whether to approve or deny loan applications) due to the delinquency on her Shell Management account. (Def's 56.1 Statement at ¶¶ 40-41). Kounlavong has been trained by his supervisors at Lending Tree on how to read the CREDCO Instant Merge Reports. (Pl.'s 56.1(b)(3)(C) Statement at ¶ 20). Kounlavong never used the CERT program, but he believes that someone told him that the CERT program would not approve Alley's loan because of the date of the reported delinquency on Alley's Shell Management account but does not recall who provided that information. (Def's 56.1 Statement at ¶¶ 42-43). Although Kounlavong advised Alley that her loan application might have been approved if the date reported for the delinquency on her Shell Management account had been changed from December 2004 to May 2003; this was only a possibility, not something he could

4

guarantee, as Kounlavong was not the person who would have made the approval. (Def's 56.1 Statement at ¶ 44). Kounlavong advised Alley that if Equifax changed the reported date from December 2004 to March 2004, instead of May 2003, he anticipated that there would still be a problem with her application, still leading to disqualification. (Def's 56.1 Statement at ¶ 45). In Kounlavong's opinion, Alley's loan application could have been denied even if the reported date for the delinquency had been changed to May 2003, as any type of late payment would pose a problem. (Def's 56.1 Statement at ¶ 46). Kounlavong's e-mails to Alley were his opinions as to what he thought CERT might be saying, but he could not say for sure because he did not know the real reasons for the denial. (Def's 56.1 Statement at ¶ 47).

On or about March 24, 2005, Kounlavong e-mailed Alley a copy of the merged credit report that Lending Tree had received from CREDCO. (Def's 56.1 Statement at ¶ 49). Alley also received a denial letter from Lending Tree in which Lending Tree stated that it had based its denial of her loan application in whole or in part on a consumer report provided by CREDCO. (Def's 56.1 Statement at ¶ 51). The letter advised Alley that she had a right to obtain a free copy of CREDCO's report and that she could dispute with CREDCO any inaccurate or incomplete information in the report.[3] (Def's 56.1 Statement at ¶ 51). The letter provided

---

[3] CREDCO maintains procedures whereby any consumer subject to a credit report issued by CREDCO can obtain a copy of CREDCO's report and dispute the accuracy or completeness of the information in the report. (Def's 56.1 Statement at ¶ 13). CREDCO's website instructs consumers on how to contact CREDCO's dispute department to initiate a dispute, and CREDCO customers who base adverse credit determinations on information provided in a CREDCO consumer report are required by law to advise the affected consumer of how to obtain a copy of the consumer report and how to contact CREDCO to initiate a dispute. (Def's 56.1 Statement at ¶ 15). The procedure is as follows: within five business days of receiving notice of a dispute, CREDCO reviews the report to determine whether the disputed information is incomplete or inaccurate due to an act or omission of CREDCO and, if so, corrects or deletes the information within 20 days after receiving notice; if CREDCO determines that the disputed information is not incomplete or inaccurate as a result of any act or omission of CREDCO, CREDCO conveys

CREDCO's address and toll-free telephone number. (Def's 56.1 Statement at ¶ 51). Alley did not initiate a dispute with CREDCO or otherwise communicate with CREDCO in any way. Instead, Alley requested a copy of her credit report from Equifax and initiated disputes with Equifax. (Def's 56.1 Statement at ¶ 52). Equifax was not mentioned in Lending Tree's denial letter to Alley, which only mentioned CREDCO. (Def's 56.1 Statement at ¶ 53). Alley never provided Equifax a copy of CREDCO's report or otherwise brought the CREDCO report into her dispute resolution efforts with Equifax. (Def's 56.1 Statement at ¶ 54). Prior to this lawsuit, CREDCO was never advised of or asked to investigate any dispute as to the information contained in its March 21, 2005 credit report to Lending Tree regarding Alley. (Def's 56.1 Statement at ¶ 55).

## **LEGAL STANDARD**

Summary judgment is appropriate under Rule 56 (c) when no genuine issue of material fact exists or when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

---

notice of the dispute, together with all relevant information provided by the consumer, to each consumer reporting agency that provided CREDCO with the information that is the subject of the dispute, using a notification mechanism specified by the consumer reporting agency for such notices. (Def's 56.1 Statement at ¶ 14). CREDCO does provide a verified credit report if the customer requests it, which requires preparation and employee involvement. (Def's 56.1 Statement at ¶ 18).

6

One of the "principal purposes" of awarding summary judgment is to "isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court that there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson*, 477 U.S. at 254-56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

A case of negligent compliance with the FCRA, 15 U.S.C. § 1681e(b), consists of four elements: (1) that there was inaccurate information in CREDCO's credit report; (2) that the inaccuracy was due to CREDCO's failure to follow "reasonable procedures" to assure the accuracy of the information it reported; (3) that she suffered actual damages; and (4) that those damages were caused by the inaccuracy. *Lee v. Experian Information Solutions, Inc.*, Case No. 02 C 8424, 2003 WL 22287351 (N.D. Ill. Oct. 2, 2003).

## ANALYSIS

Alley claims that CREDCO violated the FCRA, 15 U.S.C. § 1681 *et seq.* – specifically, 15 U.S.C. § 1681e(b) – because it failed to follow reasonable procedures to ensure the accuracy of the information it reported to Lending Tree. Alley's contention is, essentially, that CREDCO received accurate information on Alley's account with Shell Management from Experian but incorrectly interpreted that information in the merged credit report. CREDCO asserts it is

7

entitled to summary judgment on Alley's claims because: (1) the information stated in CREDCO's report was factually accurate; (2) Alley cannot show that CREDCO failed to follow reasonable procedures to ensure the accuracy of its report because CREDCO accurately reported the information it received from Equifax; and, finally, (3) even if there were a dispute as to the accuracy of the report, the record contains no evidence from which a reasonable jury could conclude that the alleged error caused Lending Tree to deny Alley's loan application or, conversely, that the application would have been approved but for the alleged error.

*Accuracy of the Report*

Under the FCRA, a consumer reporting agency is required to follow "reasonable procedures to assure maximum possible accuracy" of the information contained in a consumer's credit report. 15 U.S.C. § 1681e(b). Thus, a consumer reporting agency is in violation of §1681e(b) if "(1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 415 (4th Cir. 2001).

The parties dispute whether CREDCO's report contains inaccurate information. Although it is undisputed that Equifax reported to CREDCO that in December 2004, Alley's account with Shell Management had a current status of "5," meaning a delinquency of over 120 days, Alley contends that CREDCO erred when it summarized the information for Lending Tree because it reported the date of December 2004 under headings denoting "Last Delinquency" and "Maximum Delinquency." Alley asserts that this is inaccurate because, according to FCRA, these notations indicate a delinquency "occurring" in December 2004, which Alley claims was incorrect because December 2004 is not when the delinquency actually "occurred" since her account did not first

8

become delinquent in December 2004. CREDCO asserts that the material reported was accurate. CREDCO noted that the only Equifax witness deposed, Lynn Hudziak, testified that the "Date Reported" field of the data that Equifax transmitted to CREDCO indicates the last date on which information regarding that account was reported to Equifax by Shell Management and according to Equifax's "System to System v. 5.0" manual, "[t]he Date Reported is the date that the current Rate/Status is reported." Accordingly, in December 2004, the current "Rate/Status code" provided to Lending Tree, which in the case of Alley's Shell Management account was 5 or over 120 days delinquent, was accurate. Further, CREDCO asserts that Alley wrongly interprets the word "occurs" and that status can accurately be said to "occur" as of the date it was *reported*.

Viewing the facts in the light most favorable to Alley based on the foregoing, there are material factual issues in dispute with respect to the accuracy of the report.

*Reasonable Procedures*

A finding that the information contained in Alley's merged credit report was inaccurate does not end the inquiry. The credit reporting agency is not automatically liable even if the consumer proves that it prepared an inaccurate credit report because the FCRA "does not make reporting agencies strictly liable for all inaccuracies." *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir.1991). There is no liability under the FCRA if the credit reporting agency followed "reasonable procedures to assure maximum possible accuracy" but nonetheless reported inaccurate information in the consumer's credit report. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

Reasonable procedures are those in which a reasonably prudent person would undertake under the circumstances. *Philbin v. Trans Union*, 101 F.3d 957 (3d Cir. 1996). The

9

determination of the "reasonableness" of the defendant's procedures, like other questions concerning the application of a legal standard to given facts (notably negligence, a failure to exercise reasonable care), "is treated as a factual question even when the underlying facts are undisputed. It therefore *cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question* . . . ." *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) *(Crabill)* (emphasis added).

Here, the question is whether it was reasonable for CREDCO to reference the December 2004 date under the headings of "Last Delinquency" and "Maximum Delinquency." CREDCO's alleged failure stems from the allegedly improper use of information received from Equifax, improper interpretation of Equifax's manual, and decision to derive or create information that was never provided. The reasonableness or unreasonableness of these procedures is not beyond question, nor is whether this conduct is that which would be undertaken by a reasonably prudent person under the circumstances. Thus, this is not a question that can be decided on summary judgment.

*Actual Damages Caused by the Inaccuracy*

Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages. *Crabill*, 259 F.3d 662. A plaintiff is entitled to any actual damages sustained as a result of the negligent failure to comply with any portion of the FCRA. 15 U.S.C. §1681o. Plaintiff bears the burden of demonstrating "actual damages sustained" as a result of the Defendant's activities. *Catalbiano v. BSB Bank and Trust*, 387 F.Supp. 135 (E.D.N.Y. 2005).

10

Here, Alley alleges that her March 2005 reports were being used by Lending Tree, a mortgage loan company, to determine whether to grant Alley a mortgage loan. Alley further alleges that the late payment history on the reports caused Lending Tree to deny the loan. Thus, Alley asserts that she sustained actual damages caused by CREDCO's inaccuracy. In support of this proposition, Alley relies on statements of Kounlavong, the mortgage banker at Lending Tree who communicated with her regarding her application. In particular, Alley refers to, *inter alia,* e-mails she received from Kounlavong stating that Alley's loan was denied because of the delinquency on her Shell Management account "in that certain period" and that he thought she would be approved if the "error" were corrected. Although, Kounlavong also testified that he did not personally know why Alley's loan was denied. Nevertheless, material issues of fact remain. Specifically, CREDCO concedes that the Shell Management account was the only delinquency on Alley's credit report. Indeed, her credit scores ranged from 765 to 803, which are considered to be very good credit scores. Further, the item complained of by Alley was an account that she had paid off completely nearly two years before her application with Lending Tree. As noted above, Lending Tree's applications considered 24-month histories and, as such, had the Shell Management account been properly reported, the late payment date would have been almost beyond the scope of consideration. As in *Koropoulos v. Credit Bureau, Inc.*, 274 F.2d 37 (D.C. Cir. 1984), the plaintiff presented a material question of fact as to whether "the only reasonable interpretation" was that this was the reason for the denial. Based on the foregoing, a "reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. Here, Alley has met this burden.

## CONCLUSION

For the foregoing reasons, CREDCO's Motion for Summary Judgment is denied.

Dated: January 19, 2007

JOHN W. DARRAH
United States District Court Judge